IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**SHERRY SISNEY**                                                                                    **PLAINTIFF**

**V.**                      **CASE NO. 3:15CV00011-BD**

**CAROLYN W. COLVIN, Acting Commissioner,**
**Social Security Administration**                                    **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Plaintiff Sherry Sisney appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claims for Disability Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act. For reasons set out below, the decision of the Commissioner will be AFFIRMED.

**I.**      **Background**

On August 28, 2013, Ms. Sisney protectively filed for benefits due to a history of back injury with residual pain in her back and legs. (Tr. 9, 15, 236) Ms. Sisney's claims were denied initially and upon reconsideration. At Ms. Sisney's request, an Administrative Law Judge ("ALJ") held a hearing on October 2, 2014, at which Ms. Sisney and a Vocational Expert ("VE") appeared and testified. (Tr. 34-65) Ms. Sisney was represented by counsel at the hearing. She was forty-one years old at the time of the hearing, had a GED, and past relevant work as a sewing machine operator. (Tr. 25, 39-40)

The ALJ issued a decision on December 9, 2014, finding that Ms. Sisney was not disabled under the Act. (Tr. 9-27) On January 2, 2015, the Appeals Council denied Ms. Sisney's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-3)

Ms. Sisney filed her complaint in this court on January 13, 2015. (Docket entry #2) The parties have filed briefs (#11, #12), and the case is now ready for decision.[1]

## II.     Decision of the Administrative Law Judge[2]

The ALJ found that Ms. Sisney had not engaged in substantial gainful activity since January 1, 2010, and had the following severe impairments: degenerative disc disease of the lumbar spine, with depression and generalized anxiety disorder. (Tr. 11) The ALJ also found that Ms. Sisney did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[3] (Tr. 12)

---

[1] The parties have consented to the jurisdiction of the Magistrate Judge. (Docket #4)

[2] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 416.920(a)-(g) and 20 C.F.R. § 404.1520(a)-(g).

[3] 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 426.930(d), 416.925, and 416.926.

According to the ALJ, Ms. Sisney has the residual functional capacity ("RFC") to perform sedentary work except that she could lift, carry, push, and pull only ten pounds occasionally, and less than ten pounds frequently; she could stand or walk for two hours, and sit for six hours during an eight-hour workday, with the option of thirty-minute intervals between sitting and standing. (Tr. 14, 26) The ALJ found that Ms. Sisney retained the mental ability to understand, remember, and carry out simple job instructions; make judgments in simple work-related situations; and respond appropriately to co-workers, supervisors, with occasional incidental contact that would not be necessary to perform her work. She should avoid dealing with the general public, but had the ability to respond appropriately to minor changes in her usual work routine. (Tr. 14)

The VE testified that jobs available with these limitations were machine tender and manufacturing inspector; accordingly, the ALJ determined that Ms. Sisney could perform a number of jobs in the national economy and that she was not disabled. (Tr. 26, 63-64)

### III. Analysis

#### A. Standard of Review

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

B.     Ms. Sisney's Argument for Reversal

Ms. Sisney asserts that the Commissioner's decision should be reversed because the ALJ discounted her subjective complaints without identifying any inconsistencies between her testimony, treatment history, daily activities, or the medical evidence.  She also argues that the RFC determination is not supported by substantial evidence.  (Docket entry #11)  As explained more fully below, however, the records support the ALJ's decision to discount her subjective testimony.

On February 11, 2013, Ms. Sisney visited an orthopededist at Baxter Regional Medical Center ("Baxter") complaining of back pain.  (Tr. 317)  She reported bilateral lumbar pain, but had a full musculoskeletal range of motion ("ROM") and an unremarkable lumbar x-ray.  (Tr. 318)  In April, she returned to Baxter with the same complaints and received a cortisone injection.  (Tr. 320-21)  Three months later, Ms. Sisney went to the Troxel Medical Clinic ("Troxel"), where a physician found osteoarthritis in the lumbar spine and prescribed pain medication.  (Tr. 330, 331)

Ms. Sisney presented to Pain Management Medical Clinic ("Pain Management") on August 1, 2013, complaining of pain in her lower extremities and back. She had

4

moderately restricted back flexion and rotation, and severely restricted back extension and lateral bending. Back flexion, extension, and lateral bending caused her pain.

She reported leg pain, but her neuromuscular exam was normal, straight leg raise testing was negative for leg pain, and she walked normally. Her physician treated her with an injection, prescribed pain medication, and ordered an MRI. (Tr. 338, 339, 340)

On August 14, 2013, she returned to Pain Management where an MRI showed that she had "severe multilevel degenerative facet changes through her lumbar spine." (Tr. 335) She was positive for back and hip pain, and unable to sit straight. Her physician refilled her narcotic pain medication, and "set her up for a bilateral L4-5/L5-S1 facet joints and medial nerve branch block." (Tr. 336)

Ms. Sisney went to Pain Management again on September 7, 2013, complaining of "moderate back pain." (Tr. 333) The records indicate that she experienced "good relief" following her initial nerve blocks and injection treatment. After that treatment, her back flexion, rotation, and lateral bending were only moderately restricted; but her back extension remained severely restricted. Her physician scheduled additional injections, but Ms. Sisney did not return to Pain Management for the treatment. (Tr. 333, 381) Failure to follow a prescribed course of remedial treatment weighs against the credibility of her subjective complaints of disabling pain. See *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004).

Notably, the September 2013 medical records from Pain Management show that Ms. Sisney finished her pain medication earlier than prescribed. Her doctor refilled her

medication, but told her that he would deny her narcotics in the future and likely discharge her if she failed to follow the prescription. (Tr. 344)  Failing to take medications as prescribed weighs against a claimant's credibility. *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005).

Ms. Sisney next sought treatment for her back pain in February 2014 at Corning Area Healthcare, Inc., ("Corning").  (Tr. 381, 384)  Contrary to her claim of disabling pain, Ms. Sisney told her physician that she had strained her back "hauling scrape [sic] iron." (Tr. 384)

She returned to Corning in March 2014, complaining of a cough, congestion, and ear pain.  She requested more pain medication, and was upset that Corning would not give her a longer prescription for hydrocodone.  She refused to have her back examined. (Tr. 381-83)

Ms. Sisney did not consistently seek treatment for her back pain.  She did not return to Pain Management in September 2013, and waited five months before going to Corning.  (Tr. 381, 384)  She stated that she waited until February for treatment because she lost her insurance.  (Tr. 384)  While a lack of available resources may be a justifiable grounds for not seeking treatment, there is no evidence that she sought treatment available to indigents or chose to forgo smoking in order to afford treatment without insurance. See *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999).  Instead, she continued to smoke up to a pack of cigarettes a day.  (Tr. 438)  Smoking is an expensive, ongoing habit that can be considered when weighing Ms. Sisney's credibility. *Riggins*, 177 F.3d at 693.  In

6

March 2014, she went to Corning for ear pain, but left before having her back examined. (Tr. 381, 383)  Her failure to regularly pursue treatment for back pain supports the ALJ's decision to discount her subjective testimony.  *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003); *Robinson v. Apfel*, 242 F.3d 376, 376 (8th Cir. 2000) (per curiam).

Ms. Sisney went to The Pain Center ("Pain Center") for back pain in May, June, July, and September of 2014.  (Tr. 431, 435, 437, 467)  In May, her doctor noted decreased lumbar ROM, but also noted that she moved from a sitting position onto the exam table "without difficulty."  (Tr. 439)  She reported that her pain improved with medication, and that she enjoyed "sewing, going to the movies, reading[,] and music." (Tr. 437, 438)  Performing activities consistent with an RFC of sedentary work, while complaining of disabling pain, further weighs against Ms. Sisney's credibility as to disabling pain.  *Riggins*, 177 F.3d at 693.

In June, her doctor noted "no significant changes," and performed a left lumbar medial branch block.  (Tr. 435)  In July, her doctor performed a second medial branch block.  (Tr. 431)  At her September visit, Ms. Sisney received an interlaminar epidural injection.  (Tr. 467)

Additionally, the medical records show that Ms. Sisney made conflicting statements about her drug and alcohol use.  During her February 2014 exam, she stated that she was an alcoholic, and had been "drinking daily until six months ago, [but had] been sober for about a month."  (Tr. 386)  In June 2014, she told a physician that she last drank alcohol in 2012.  (Tr. 420)  During her visits to the Pain Center, Ms. Sisney

7

reported that she had last used methamphetamine five years ago, but at the hearing testified that her last use was eight years ago, and that all of her polysubstance abuse problems were in full remission. (Tr. 40, 41, 409, 420) Her conflicting statements about her drug and alcohol use further support discounting her subjective testimony. *Boettcher v. Astrue*, 652 F.3d 860, 864 (8th Cir. 2011); *Simmons v. Massanari*, 264 F.3d 751, 756 (8th Cir. 2001).

The ALJ identified inconsistencies between the medical records and Ms. Sisney's testimony in his decision to discount her subjective complaints. *See Beckley v. Apfel*, 152 F.3d 1056, 1060 (8th Cir. 1998). The ALJ noted that, "in some contrast to [her] testimony" about limitations caused by her symptoms, she prepared her own meals, did housework, went to the movies, went shopping for at least three hours at a time, and drove herself. (Tr. 17, 22, 43-48, 269) Despite her subjective complaints of pain, she engaged in "extensive daily activities" well after her disability onset date. *Riggins*, 177 F.3d at 693. The ALJ found that, despite alleging "a state of complete debilitation," there was no medical evidence supporting Ms. Sisney's allegations that her symptoms were as persistent, lasted as long, or were as severe as she claimed. (Tr. 24) The absence evidence supporting the severity of her claims supports the ALJ's determination. *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997). The ALJ also noted that Ms. Sisney made numerous conflicting statements about her drug and alcohol use. (Tr. 21, 25, 40-41)

Accordingly, the ALJ properly discounted Ms. Sisney's subjective claims in his RFC determination. The limitations included in the hypothetical posed to the VE encompassed all limitations supported by the evidence. Thus, the ALJ's decision is supported by substantial evidence on the record as a whole.

## IV.   Conclusion

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence. There is sufficient evidence in the record as a whole to support the Commissioner's decision. The ALJ made no legal error to justify remand or reversal.

Accordingly, Ms. Sisney's appeal is DENIED, and the Clerk of Court is directed to close the case.

IT IS SO ORDERED, this 24th day of July, 2015.

_____
UNITED STATES MAGISTRATE JUDGE